UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ADVANCED WOUND CARE, LLC,
d/b/a WOUNDGENEX

Plaintiff, Case No. ______________

vs.

MIDDLE GEORGIA VASCULAR
SURGERY CENTER L.L.C., and
ALLISON BURKETT, M.D.

Defendants.

---

THE HEALTH LAW PARTNERS, P.C.
Clinton Mikel, Esq.
*Attorneys for Plaintiff*
32000 Northwestern Highway,
Suite 240
Farmington Hills, MI 48334
Tel: (248)996-8510
cmikel@thehlp.com

---

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Advanced Wound Care, LLC, d/b/a WoundGenex ("**WoundGenex**") brings this action against Defendants, Middle Georgia Vascular Surgery Center L.L.C. ("**MGVSC**"), and Dr. Allison Burkett, M.D. ("**Dr. Burkett**").

## NATURE OF THE ACTION

1. This is an action for breach of contract, unjust enrichment, account stated, and conversion arising out of Defendants' failure to make payments owed under the Parties' WoundGenex Graft Program Agreement (the "**Agreement**"), and arising out of Defendants' wrongful exercise of dominion and control over specifically identifiable funds and proceeds generated from the use of Plaintiff's Products and Services.

## PARTIES

2. Plaintiff is a Florida limited liability company with its principal place of business at 550 W Baseline Rd., Suite 102-416, Mesa, AZ 85210.

3. Defendant MGVSC is a Georgia limited liability company with its principal place of business located at 1025 North Houston Rd., Suite 100, Warner Robins, GA 31093.

4. Defendant Allison Burkett, M.D, is, upon information and belief, an individual residing in Georgia.

5. Upon information and belief, Dr. Burkett is the sole owner, principal, and/or managing member of MGVSC and exercised dominion, control, and decision-making authority over MGVSC's business affairs, operations, and finances during the time period relevant to this action.

6. Upon information and belief, Dr. Burkett personally directed, controlled, approved, ratified, and/or participated in the acts and omissions alleged herein.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity of citizenship exists between Plaintiff and Defendants.

8. This Court has personal jurisdiction over Defendant MGVSC because MGVSC is a Georgia limited liability company with its principal place of business located in this District and, upon information and belief, conducts and transacts business in this District.

9. This Court has personal jurisdiction over Defendant Dr. Burkett because, upon information and belief, she is an individual residing in this District and is the sole owner, principal, and/or managing member of MGVSC and personally directed and participated in the conduct giving rise to the claims alleged herein, including Defendants' failure to remit payments owed to Plaintiff under the Agreement.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District. Defendant MGVSC is a Georgia limited liability

company with its principal place of business in this District, and Defendant Dr. Burkett is, upon information and belief, an individual residing in this District. Additionally, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND

11. On or about May 16, 2025, Plaintiff and MGVSC entered into the Agreement. Under the Agreement, WoundGenex agreed to provide wound care products, including skin substitutes (the "**Products**"), as well as related consulting and revenue cycle management services (the "**Services**"), to MGVSC.

12. In return, MGVSC agreed, among other things, to compensate WoundGenex as set forth in the Agreement, including by remitting payment on a bimonthly basis via Automated Clearing House ("**ACH**") debit within three (3) days of the invoice date.

13. The Agreement further provides that WoundGenex may charge a ten percent (10%) late fee per month on past-due amounts and that the prevailing party in any litigation or court proceeding arising out of the enforcement of the Agreement is entitled to recover its reasonable attorneys' fees and related legal fees and costs.

14. The Agreement contains a choice of law provision providing that the Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

15. Plaintiff fully performed, and at all times was ready, willing, and able to perform, its obligations under the Agreement, including by supplying Products and providing Services to MGVSC as requested and in accordance with the Agreement's terms.

16. MGVSC accepted and utilized Plaintiff's Products and Services in connection with wound care procedures and graft applications performed for its patients and thereby received the benefit of Plaintiff's performance under the Agreement.

17. In or around November 2025, WoundGenex issued invoices to MGVSC for amounts due and owing under the Agreement for Products and Services previously supplied. Consistent with the Agreement, those invoices were to be satisfied through ACH auto-payments initiated by Plaintiff within three (3) days of the invoice dates.

18. MGVSC failed and/or refused to timely pay the invoiced amounts as required by the Agreement, and revoked Plaintiff's ACH authorization, further violating the Agreement and preventing the agreed automatic remittance of funds.

19. MGVSC operated under the Agreement for a significant period of time, accepted and retained the benefits of Plaintiff's Products and Services, and did not object to or dispute Plaintiff's invoices or statements of account as to accuracy or amount within a reasonable time.

20. As of the filing of this Complaint, MGVSC owed Plaintiff at least $235,100.00 for Products and Services provided under the Agreement, exclusive of contractual late charges, interest, and attorneys' fees.

21. In connection with MGVSC's use of WoundGenex's Products and Services, MGVSC submitted claims to Medicare and other third-party payors for graft-related dates of service and, upon information and belief, received reimbursements, payments, and other collections (the "**Graft Collections**") attributable to those dates of service.

22. Upon information and belief, in submitting claims to Medicare and other third-party payors for reimbursement relating to graft procedures involving Plaintiff's Products, MGVSC represented, certified, and/or warranted that it had properly acquired, possessed, and paid for those Products and was entitled to reimbursement arising from their use.

23. Under the Agreement, the Graft Collections were intended, in whole or in part, to fund and satisfy MGVSC's payment obligations to WoundGenex for the Products and Services used in those graft procedures.

24. Upon information and belief, Dr. Burkett, as the sole owner, principal, and/or managing member of MGVSC, exercised dominion and control over MGVSC's bank accounts and finances, including the receipt, allocation, and use of the Graft Collections.

25. Upon information and belief, after MGVSC received Graft Collections from Medicare and other payors for graft procedures in which Plaintiff's Products and Services were used, Dr. Burkett directed, approved, ratified, and/or participated in the use of those Graft Collections for purposes other than remitting payment to WoundGenex for the corresponding Products and Services.

26. By retaining and using the Graft Collections for purposes other than paying Plaintiff, Defendants exercised dominion and control over funds attributable to Plaintiff's Products and Services in a manner inconsistent with Plaintiff's rights.

**COUNT I – BREACH OF CONTRACT**
**(*Against Defendant MGVSC*)**

27. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

28. The Agreement is a valid and enforceable contract between Plaintiff and MGVSC.

29. Plaintiff performed its obligations under the Agreement by providing Products and Services to MGVSC, and MGVSC accepted and retained the benefits of those Products and Services.

30. MGVSC materially breached the Agreement by, among other things, failing to timely pay amounts due and owing to Plaintiff in accordance with the

Agreement's payment terms, including the requirement of utilizing ACH auto-payments within three (3) days from invoice date.

31. As a direct and proximate result of MGVSC's breach, Plaintiff has suffered damages in an amount of at least $235,100.00, exclusive of contractual late charges, interest, attorneys' fees, and costs.

32. Under the Agreement, Plaintiff is entitled to recover applicable late charges on past-due amounts and reasonable attorney's fees and costs incurred to enforce the Agreement.

33. Plaintiff demands judgment against Defendant MGVSC for damages in an amount to be proven at trial, together with applicable late charges, attorney's fees, costs, and such further relief as the Court deems just and proper.

## COUNT II – UNJUST ENRICHMENT
**(*Against All Defendants*)**

34. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

35. Plaintiff conferred a direct benefit upon Defendants by providing Products and Services for Defendants' use and benefit.

36. Defendants knowingly accepted and retained the benefits of Plaintiff's Products and Services. Indeed, MGVSC billed Medicare and other payors for procedures involving Plaintiff's Products and Services and, upon information and belief, received revenues, reimbursements, and collections arising from those

procedures, while representing and warranting to those payors that it had properly acquired and paid for the Products at issue.

37. Upon information and belief, Dr. Burkett, through her ownership, control, and/or management of MGVSC, knowingly accepted, retained, and benefitted from Plaintiff's Products and Services provided to MGVSC.

38. Defendants have failed or otherwise refused to pay Plaintiff for the Products and Services provided.

39. Under the circumstances, it would be inequitable for Defendants to retain the benefits of Plaintiff's Products and Services without paying Plaintiff the reasonable value of those benefits.

40. Accordingly, and to the extent the Agreement is found unenforceable or otherwise inapplicable as to any Defendant, Plaintiff is entitled to recover from Defendants, in equity, the value of the benefit conferred in an amount of at least $235,100.00, together with such other relief as the Court deems just and proper.

**COUNT III – ACCOUNT STATED**
**(*Against Defendant MGVSC*)**

41. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

42. Prior to the initiation of this action, Plaintiff and MGVSC engaged in business transactions pursuant to which Plaintiff provided Products and Services and MGVSC became obligated to pay Plaintiff for those Products and Services.

43. Plaintiff rendered invoices to MGVSC reflecting the amounts due.

44. MGVSC received the invoices/statements and did not dispute or object to their accuracy or the amounts stated within a reasonable time.

45. By failing to timely object, MGVSC assented to the balance stated and impliedly promised to pay Plaintiff the amount due.

46. MGVSC has failed or otherwise refused to pay the balance stated. As a result, Plaintiff is owed at least $235,100.00, plus applicable late charges and attorney's fees as provided under the Agreement.

**COUNT IV – CONVERSION**
**(*Against All Defendants*)**

47. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

48. Plaintiff had and has a right to possession of specifically identifiable funds and proceeds, including the Graft Collections, arising from Medicare and other third-party payor reimbursements for graft-related dates of service in which Plaintiff's Products and Services were used.

49. Upon information and belief, Defendants received, possessed, controlled, and/or exercised dominion over the Graft Collections.

50. Defendants' dominion and control over the Graft Collections was wrongful and unauthorized insofar as Defendants retained, used, diverted, and/or applied those specifically identifiable funds for purposes other than satisfying

Plaintiff's right to payment for the Products and Services supplied in connection with the corresponding graft-related dates of service.

51. Upon information and belief, Dr. Burkett personally directed, approved, ratified, and/or participated in the retention, diversion, and/or use of the Graft Collections in a manner inconsistent with Plaintiff's rights.

52. Defendants' conduct deprived Plaintiff of specifically identifiable funds and proceeds to which Plaintiff had a superior right of possession and caused Plaintiff damage in an amount to be proven at trial, but in no event less than $235,100.00, exclusive of interest, attorneys' fees, and costs.

53. Plaintiff has demanded payment of the amounts due, and Defendants have failed or otherwise refused to remit such amounts to Plaintiff.

54. As a direct and proximate result of Defendants' conversion, Plaintiff has suffered damages and is entitled to judgment against Defendants for compensatory damages, together with prejudgment interest and such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

55. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Advanced Wound Care, LLC d/b/a WoundGenex, respectfully requests that the Court enter judgment in its favor and against

Defendants, Middle Georgia Vascular Surgery Center L.L.C. and Allison Burkett, M.D., and award the following relief:

A. Compensatory damages in an amount to be proven at trial, but in no event less than $235,100.00;

B. Applicable late charges as permitted under the Agreement;

C. Reasonable attorney's fees and costs pursuant to the Agreement and other applicable law;

D. Prejudgment and post-judgment interest as allowed by law; and

E. Such other and further relief as the Court deems just and proper.

Date: May 22, 2026

Respectfully submitted,

THE HEALTH LAW PARTNERS, P.C.

By: /s/ *Clinton Mikel*__________

Clinton Mikel, Esq.
32000 Northwestern Hwy, Suite 240
Farmington Hills, MI 48334
Telephone: (248) 996-8510
Email: cmikel@thehlp.com

**ATTORNEYS FOR PLAINTIFF**